IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

CIVIL CASE NO.: 1:21-cv-20611-DPG (Gayles / Torres)

FRONTIER DEVELOPMENT, LLC,

Plaintiff,

v.

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY,

Defendant.

_____/

**DEFENDANT ENDURANCE AMERICAN SPECIALTY INSURANCE
COMPANY'S AMENDED MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**
**(Amended Only to Include Exhibit 1)**

COMES NOW, Endurance American Specialty Insurance Company ("Endurance") and pursuant to Fed. R. Civ. R. 12(b)(6) and local rule 7.1, files this Amended Motion to Dismiss Plaintiff Frontier Development, LLC's ("Plaintiff") Complaint for failure to state a claim.

**I.    INTRODUCTION**

Plaintiff alleges that the circumstances of the Coronavirus Pandemic ("COVID19") have caused it to suffer business losses. Endurance issued a policy of commercial property insurance to Plaintiff. Plaintiff alleges that it is entitled to insurance coverage under the Policy for its losses. However, each provision for which Plaintiff seeks coverage requires direct physical loss or damage caused by a covered cause of loss. Moreover, the Policy contains a communicable or infectious disease exclusion along with other applicable exclusions which would preclude coverage even if otherwise available. Because Plaintiff cannot show that it experienced direct physical loss or damage by a covered cause of loss and because the loss is otherwise excluded, the Court should grant Endurance's motion.

**II.    STATEMENT OF RELEVANT FACTS**

**A.    THE COMPLAINT**

Plaintiff "acquires, develops, builds and manages commercial assets in Florida and

1

throughout the United States" (Complaint ¶ 77). Endurance issued Commercial Property Policy MPR30000603002 to Plaintiff as named insured for the policy period of March 8, 2020 to March 8, 2021 ("Policy"). Plaintiff attached a copy of the Policy to its Complaint as **Exhibit A** (Complaint, ¶ 5; Exhibit A). Plaintiff filed its Complaint against Endurance on January 21, 2021 seeking insurance proceeds arising from COVID-19.

Plaintiff does not allege the presence of the virus on any particular surface or property, instead, Plaintiff cites the "widespread community transmission" and states "thus, upon information and belief, the COVID-19 virus was physically present, active on inert physical surfaces and/or emitted into the air at Frontier's commercial tenants' properties between March 8, 2020 and the present." (Complaint ¶ 82). Plaintiff claims that "[t]he presence of COVID-19 at Frontier's commercial tenants' properties caused direct physical loss and damage to property because, among other things, it made Frontier unable to utilize something in the real, material, or bodily world, resulting from a given cause (i.e., COVID-19)." (Complaint ¶ 83). Plaintiff alleges "[t]he presence of COVID-19 at Frontier's commercial tenants' properties further caused direct physical loss and damage to property because the COVID-19 virus particles attach to, live on and are active on inert physical surfaces while also being emitted into the air." (Complaint ¶ 84). According to Plaintiff, "COVID-19 was also present within one mile of one or multiple of Frontier's commercial tenants' properties." (Complaint ¶ 87).

Plaintiff states: "[t]he presence of COVID-19 and the public health emergency it has created have prompted actions by civil authorities throughout the United States, including but not limited to civil authorities with jurisdiction over Frontier and its covered properties…" (Complaint ¶ 35) Plaintiff claims that civil authorities in Alabama, Delaware, Illinois, Maryland, North Carolina, New Jersey, New Mexico, New York, Oklahoma, Pennsylvania, South Carolina, Texas, and Virginia "carried out [actions of civil authority] because COVID-19 attaches to physical surfaces, thereby creating a dangerous physical condition that motivated local, state and national authorities to prohibit access to public areas, including Frontier's commercial properties." (Complaint ¶ 74). According to Plaintiff, "[t]hese orders totally prohibited access to Frontier's commercial tenants' properties by prohibiting these tenants from opening or otherwise using their respective businesses." (Complaint ¶ 88). Plaintiff claims "[a]s a result of the presence of COVID-19, Frontier has suffered a loss of actual rental value." (Complaint ¶ 92).

B.  **THE POLICY**

In the Complaint, Plaintiff points to the coverages for loss of business income and extra expense. (Complaint ¶ 7). Plaintiff further contends that the following "Additional Time Element Coverages" apply to its losses: (1) Section V. D. 2. Contingent Time Element; (2) Section V. D. 7. Ingress and Egress; (3) Section V. D. 8. Interruption by Civil or Military Authority; (4) Section V. D. 9. Leasehold Interest; and (5) Section V., D. 10. Rental Value. (Complaint ¶¶ 18-24). However, each of these coverages requires direct physical loss or damage to property. Pertinent portions of the Policy provide:

**COMMERCIAL PROPERTY POLICY**

**SECTION I – INSURING AGREEMENT AND COVERED PROPERTY**

A.  **INSURING AGREEMENT**

This Policy insures against all risk of direct physical loss or damage to **covered property** described herein occurring during the term of this Policy, except as hereinafter excluded.

\*\*\*

(Policy, 1 of 64).

**SECTION V – TIME ELEMENT COVERAGES**

A.  **INSURING AGREEMENT**

We will pay the actual **business income** loss sustained by you due to the necessary partial or total interruption of your business operations, services or production during the **period of indemnity** as a result of direct physical loss or damage to: (1) **covered property** by a **covered cause of loss**; or (2) property of the type insured under this Policy by a **covered cause of loss** which directly affects your use of the **covered property**, provided that you are a lessee or occupant of the premises where the direct physical loss or damage occurred.

\*\*\*

(Policy, 29 of 64).

D.  **ADDITIONAL TIME ELEMENT COVERAGES**

The following Additional Time Element Coverages and any Additional Time Element Coverages added to this Subsection by endorsement or through the Special Terms and Conditions are subject to the terms and

3

conditions of this Policy. All loss or damage, including **business income** loss and **extra expense**, for which coverage is provided under the Additional Time Element Coverages is subject to the sublimits of liability as shown in Item **7.C**. of the Declarations, the sublimits of liability shown elsewhere in this Policy and the **Policy Limit**. All **extra expense** is further limited to the Extra Expense sublimit of liability as shown in Item 7.C. of the Declarations.

***

(Policy, 31 of 64).

    **2.**    **CONTINGENT TIME ELEMENT**

        a.    If direct physical loss or damage caused by a **covered cause of loss** to property of the type insured under this Policy is sustained by your direct supplier or your direct customer, anywhere in the world and such loss or damage:

            i.    Wholly or partially prevents your direct supplier from supplying their goods and/or services to you; or

            ii.    Wholly or partially prevents your direct customer from accepting your goods and/or services;

        then we will pay the actual **business income** loss and **extra expense** sustained by you during the period of indemnity with respect to such property of the type insured under this Policy. This coverage does not apply to new buildings or additions in the course of construction of any direct supplier or direct customer. You will cooperate with your direct supplier or direct customer and take any reasonable and necessary actions, including the use of other machinery, supplies or locations, to mitigate the loss payable herein.

        b.    Subject to the Contingent Time Element sublimit(s) of liability shown in Item 7.C. of the Declarations, we will pay the actual business income loss and extra expense sustained by you in accordance with Subsection a. above:

            i.    If ingress to or egress from your direct supplier's or your direct customer's location is partially or totally prevented in accordance with the same exclusions, limitations and time period that apply to the Ingress & Egress Additional Time Element Coverage;

4

    ii. If an order of civil or military authority limits, restricts or prohibits access to property not insured under this Policy, provided that the effect of such order partially or totally prohibits access to your direct supplier's or your direct customer's location in accordance with the same exclusions, limitations and time period that apply to the Interruption By Civil Or Military Authority Additional Time Element Coverage; or

    iii. If an order of civil or military authority limits, restricts or prohibits partial or total access to your direct supplier's or your direct customer's location and such order is a direct result of: (i) a violent crime, suicide, attempted suicide, or armed robbery at such location, or (ii) a death or bodily injury (not including, disease or sickness) at such location. Coverage begins on the date and time that the order of civil or military authority limits, redirects or prohibits partial or total access to your direct supplier's or your direct customer's location and ends on the date such location could be reopened for business but in no event for more than the number of days shown in Item C. of the Declarations under Interruption By Civil Or Military Authority.

(Policy, 32-33 of 64).

## 7. INGRESS & EGRESS

We will pay the actual **business income** loss sustained by you and **extra expense** caused by direct physical loss or damage caused by **a covered cause of loss** to property not insured under this Policy, provided that:

a. Such direct physical loss or damage to such property totally prevents physical ingress to or egress from a **covered location**; and

b. Such property not insured under this Policy is within the distance from the **covered location** as shown in Item **7.C**. of the Declarations under Ingress & Egress.

(Policy, 35 of 64).

## 8. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY

We will pay the actual **business income** loss sustained by you and **extra expense** if an order of civil or military authority limits, restricts or prohibits access to property not insured under this Policy, provided that:

5

    a.    Such property sustains direct physical loss or damage caused by a **covered cause of loss**;

    b.    Such property is within the distance from the **covered location** as shown in Item **7.C.** of the Declarations under Interruption by Civil or Military Authority; and

    c.    The effect of such order is to totally prohibit access to a **covered location**.

(Policy, 35-36 of 64).

**9.  LEASEHOLD INTEREST**

If **covered property** is: (1) rendered wholly or partially untenantable by direct physical loss or damage to the **covered property** by a **covered cause of loss** during the policy period; and (2) your lease is canceled by an entity other than you or an entity that has a common ownership with you, in accordance with the conditions of the lease, then we will pay **your interest as lessee** or **your interest as lessor**, whichever is applicable, but as lessor only for the first three months following the date of the loss and the **net lease interest** shall be paid for the remaining months of the unexpired lease unless a shorter time period is indicated in Item **7.C**. of the Declarations.

**10.  RENTAL VALUE**

We will pay the actual **rental value** loss sustained by you due to direct physical loss or damage by a **covered cause of loss** to **covered property** held for rental to others at a **covered location**. The **rental value** loss shall not exceed the reduction in **rental value** less charges and expenses which do not necessarily continue.

***

(Policy, 36 of 64).

SECTION VIII – DEFINITIONS

**10.  Covered cause(s) of loss** means a peril or other type of loss, not otherwise excluded under this Policy.

(Policy, 49 of 64).

The Policy contains the following exclusions which preclude coverage even if losses would otherwise fall within the scope of the Policy. Here, the relevant exclusions include:

SECTION IV – PERILS EXCLUDED

    1.    Except as otherwise provided under the Additional Coverages or Additional Time Element Coverages (and in such event, only to the extent provided therein), we do not insure loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. The following exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

***

(Policy, 25 of 64).

    2    We will not pay for loss or damage caused by, or attributable to, any of the following:

        a.    Delay, loss of market, or loss of use.

        b.    Indirect, remote, or consequential loss or damage.

***

        i.    Communicable or infectious disease, condition or sickness, including (i) any causative agent of any such condition, disease, or sickness regardless of whether such agent gives rise to any such condition, disease, or sickness, or (ii) any actual or attempted testing for, containing, detoxifying, mitigating, monitoring or neutralizing of, responding to, or assessing the effects of any communicable or infectious disease, condition or sickness or causative agent.

(Policy, 28-29 of 64).

**SECTION V – TIME ELEMENT COVERAGES**

***

    E.    **Additional Time Element Exclusions**

For time element loss covered under this Policy, we will not pay for:

    **1.**    **Idle Periods**

Any loss during any period in which business would not or could not have been conducted for any reason other than a loss for which coverage would have been provided under this Policy.

    **2.**    **Remote Loss**

        a.    Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order;

        b.    Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

        c.    Any other consequential or remote loss;

unless coverage is provided under any Additional Time Element Coverage and then only to the extent provided therein.

(Policy, 38-39 of 64)

**III.**    **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation omitted). "[N]aked assertions devoid of further factual enhancement" do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A complaint must contain enough facts to plausibly allege the required elements." *Island Hotel Properties, Inc. v. Fireman's Fund Ins. Co.*, No. 4:20-CV-10056-KMM, 2021 WL 117898, at *2 (S.D. Fla. Jan. 11, 2021)

Under Florida law, the "interpretation of an insurance contract—including the question of whether an insurance provision is ambiguous—is a question of law." *Malaube LLC v. Greenwich Ins. Co., No. 20-22615-Civ-WILLIAMS/TORRES,*, 2020 WL 5051581, at *2 (S.D. Fla.. Aug. 26, 2020) (citing *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113, 1113 (Fla. Dist. Ct. App. 2003)). If the language of an insurance policy is clear and unambiguous, courts must enforce it as written and according to its terms. *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla Dist. Ct. App. 1996). Further, "[i]n construing an insurance contract, a court must strive to give every provision meaning and effect." *Mama Jo's Inc.v. Sparta Ins. Co.* 823 Fed. Appx. 868, 878 (11th Cir. 2020) (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Moreover, it is improper for "courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Swire Pac. Holdings v.*

*Zurich Ins.*, 845 So. 2d 161, 165 (Fla. 2003). Florida law does not require insurers to "insure risks that they never contracted to cover." *Musselwhite v. Fla. Farm Gen. Ins. Co.*, 273 So. 3d 251, 255 (Fla. Dist. Ct. App. 2019).

IV.     **ARGUMENT AND AUTHORITIES**

"Courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Cammarota v. Penn-American Ins. Co.*, No. 17-CV-21605-WILLIAMS, 2017 WL 5956881, at *2 (S.D. Fla. Nov. 13, 2017) (collecting cases); *see Malaube*, 2020 WL 5051581, at *6–10 (recommending dismissal and holding that direct physical loss of or damage to property is an unambiguous prerequisite for coverage); *Infinity Exhibits Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at *2 (M.D. Fla. Sept. 28, 2020) (dismissing a coverage claim because plaintiff failed to "describe how the [p]roperty or any other property experienced 'direct physical loss or damage'"); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (dismissing a coverage claim where, "as a matter of law, the plain language of the insurance policy exclude[d] coverage of the . . . purported damages").

Under the plain language of the Policy, Plaintiff must show that property has sustained "direct physical loss or damage." Plaintiff's failure to allege any facts showing that property sustained physical loss or damage precludes coverage. Accordingly, Plaintiff has not stated a claim for relief. Moreover, even if coverage were triggered, Plaintiff's damages are excluded under the unambiguous terms of the Policy.

> A.   **Plaintiff has failed to plausibly allege "direct physical loss or damage" to property as required to trigger coverage under the Policy.**

Florida law places the burden on the insured, as the party presenting the claim for coverage, to prove that the claim falls within the Policy's affirmative coverage grant. *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1359 (S.D. Fla. 2019), ("The insured bears the burden of proving the claim falls within the Policy's affirmative grant of coverage.").

The Policy requires "direct physical loss or damage to" property. This requirement is contained in the insuring agreement under the main coverage form, the insuring agreement under the time element coverages, as well as each of the additional coverages identified by Plaintiff: (1)

9

Contingent Time Element; (2) Ingress and Egress; (3). Interruption by Civil or Military Authority; (4). Leasehold Interest; and (5) Rental Value.

Notably, Plaintiff does not seek coverage for any costs incurred outside of the time element provisions of the Policy. That is, Plaintiff does not seek any amounts to repair property damage at any of its premises. (Complaint, *passim*). Instead, Plaintiff alleges that: "[t]he presence of COVID-19 at Frontier's commercial tenants' properties caused direct physical loss and damage to property because, among other things, it made Frontier unable to utilize something in the real, material, or bodily world, resulting from a given cause (i.e., COVID-19)." (Complaint ¶ 83). Plaintiff further alleges "[t]he presence of COVID-19 at Frontier's commercial tenants' properties further caused direct physical loss and damage to property because the COVID-19 virus particles attach to, live on and are active on inert physical surfaces while also being emitted into the air." (Complaint ¶ 84). Plaintiff provides no explanation as to how the presence of the virus at or near its premises caused direct physical loss or damage to property. (Complaint, *passim*).

Third District Court of Appeal has explained that "'direct' and 'physical' modify loss and impose the requirement that the damage be actual." *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla.Dist. Ct. App. 2017). "[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Couch on Insurance § 148.46 (3d Ed. 2019).

This Court has noted that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Malaube,* 2020 WL 5051581, at *5 (citing *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020)). This court has recently noted, "[b]ecause '"direct physical' modifies both 'loss' and 'damage,'... any 'interruption in business must be caused by some physical problem with the covered property'" to be a covered loss." *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, No. 4:20-CV-10056-KMM, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021).

This Court has also dismissed arguments similar to Plaintiff's that business interruption claims arising out of the pandemic and related government orders are covered under property policies. *El Novillo Restaurant v. Certain Underwriters at Lloyd's, London*, 1:20-cv-21525-UU, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020). The Business Income and Extra Expense coverage sections in the *El Novillo Restaurant* policy were similar to the Policy here in that they required "'direct physical loss of or damage to' the Properties" *Id* at *3 The plaintiffs in *El Novillo Restaurant* alleged they "suffered direct physical losses of or damage to their properties due to the suspension of their operations from the global COVID-19 pandemic," and that they "suffered both direct physical losses and damage to the properties in the form of diminished value, lost business income, a reduction in right of full ownership, and forced physical alterations during a period of restoration." *Id*. at *1. The Court found that the plaintiffs had failed to allege that the property suffered any physical damage and dismissed the action. *Id.*at *7.

Similarly, in *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, Case No. 1:20-cv-22833-BB, 2020 WL 6392841 (SD. Fla. Nov. 2, 2020), the court was unpersuaded by the insured's' argument that the complaint sufficiently alleged that the cause of loss was the governmental suspension orders and/or the COVID-19 Pandemic and that there was direct physical loss and damage because nonessential dental procedures were suspended by Governor DeSantis. *Id*. at *6.

As recently as February 16, 2021, this Court has considered, and rejected, an insured's contention that "its loss was 'direct' and 'physical' because 'it is possible or likely that COVID-19 may have been present at the insured premises." *Café La Trova, LLC v. Aspen Specialty Ins. Co.*, No. 20-22055-CMA, ECF No. 53 (S.D. Fla. Feb. 16, 2021) (A copy of the Order is attached hereto as **Exhibit 1**). There, the Court stated unequivocally that "'[t]he mere presence of the virus on the physical structure of the premises' does not amount to 'direct physical loss**.**'" *Id*. at 17 of 23 (quoting Mena Catering, Inc. v. Scottsdale Ins. Co., No. 1:20-cv-23661, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021)) (emphasis added).

The Southern District of Florida previously considered the same issue, coming to the same conclusion. Despite allegations that COVID-19 was "present" at an insured property, the court found that the Plaintiff had not adequately alleged direct physical loss or damage. *Island Hotel Props.,* 2021 WL 117898, at *3.There, the court looked to a recent decision from the Northern District of Illinois which noted: "In essence, plaintiff seeks insurance coverage for

11

financial losses as a result of the closure orders. **The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property.** Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage." *Id*. at *3 (quoting *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020), reconsideration denied, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021) (emphasis added)). Similarly, here, Plaintiff asserts conclusory allegations that "upon information and belief, the COVID-19 virus was physically present, active on inert physical surfaces and/or emitted into the air at Frontier's commercial tenants' properties between March 8, 2020 and the present." (Complaint ¶ 82). These allegations do not plausibly allege that Plaintiff's property sustained direct physical loss or damage.

Several other courts in Florida have also rejected claims like Plaintiff's on the basis that they did not trigger coverage under the similar language as the Policy's. *E.g., Dime Fitness, LLC DBA: Anytime Fitness v. Markel Ins. Co.*, Case No: 20-CA-5467, 2020 WL 6691467 (Fla. Cir. Ct. Nov. 10, 2020) (finding that "business income loss, along with a vague reference to 'damage' in the form of a denial of access to the premises" are not covered by the commercial property policy); *Infinity Exhibits, Inc. v. Lloyd's London*, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) (citing *Mama Jo's II* for the proposition that Florida law and the plain language of the policy require "actual, concrete damage"). As the court in *Dime Fitness* noted this Court "cannot allow sympathy to cloud its review of the plain meaning of an insurance policy." *Dime Fitness*, 2020 WL 6691467 at *3. "Insurance companies cannot bear the burden of this crisis, where, as here, the Policy does not provide for coverage of purely economic losses resulting from the COVID-19 pandemic." *Id*.

Additionally, courts across the county have held in cases similar to this one that the phrase "direct physical loss" requires actual physical damage to the insured premises in order for coverage to be triggered:

- *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.,* 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020) (finding policy language issue unambiguous and holding because Governor's Executive Order did not create a "direct physical loss of" plaintiff's dining rooms, the Business Income provision did not apply);
- *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *5 (D.C. Super. Aug. 6, 2020) (granting summary judgment for insurer on restaurant's claims of lost

business caused by COVID-19 orders because there was no direct physical loss to property);

- *Turek Enter., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) (granting insurer's motion to dismiss against chiropractic office, finding there was no coverage for business interruption because the losses were not the result of "accidental direct physical loss to Covered Property");

- *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 C 3311 (S.D.N.Y. 2020), ECF No. 25, Ex. B at 5:3-4 (denying a motion for preliminary injunction because the coronavirus does not cause direct physical loss; it "damages lungs. It doesn't damage printing presses");

- *10E, LLC v. Travelers Indem. Co. of Conn.,* 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020) ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.' . . . 'Detrimental economic impact' does not suffice.") (internal citations omitted);

- *Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos,* No. CV 20-3619 PSG (EX), 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) (dismissing claim under "loss of or damage to" language where insured "fails to allege that there was physical damage to the property and concedes that Coronavirus 'has never been detected at [its] property'"); *Diesel Barbershop, LLC v. State Farm Lloyds*, -- F. Supp. 3d --, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (granting motion to dismiss because coronavirus did not cause direct physical loss, and "the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'");

- *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB, 2020 WL 4561979 (Mich. 2020), (explaining that direct physical loss to property requires tangible alteration or damage that impacts the integrity of the property, and dismissing case because plaintiff failed to allege that coronavirus had any impact to the premises);

- *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) (dismissing case because plaintiff had not pled and was unable to show physical alteration or structural degradation of the property).

In *Water Sports Kauai, Inc. v. Fireman's Fund Insurance Co.*, Case No. 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal Nov. 9, 2020), the court followed the "overwhelming majority of courts [that] have determined the mere threat of coronavirus" does not and cannot

cause a "direct physical loss of or damage to" covered property. *Id.* at *3. The court found that "preventative closure orders cannot support a causal link of direct physical loss of or damage to property. . . ." *Id.* at *8. The court found that the civil authority provision of the policy was not triggered because there was no allegation of direct physical loss to the neighboring properties. *Id.*

The body of case law arising out of coverage actions involving COVID-19 overwhelmingly indicates that property policies do not cover the kind of purely economic loss Plaintiff is claiming. Plaintiff is seeking coverage for alleged loss of business income purportedly caused by government orders relating to the pandemic and not as a result of direct physical loss or damage to property. Accordingly, the Policy does not afford coverage.

### B. Plaintiff's claimed losses are not due to a "covered cause of loss" because they are specifically excluded in the Policy.

In the unlikely event the Court finds that there was direct physical loss of or damage to Covered Property, Plaintiff still would not be entitled to coverage because there was no covered cause of loss. All of the relevant coverage grants require a covered cause of loss, defined as "Covered cause(s) of loss means a peril or other type of loss, not otherwise excluded under this Policy." (Policy p. 49 of 64). Because the Policy contains several pertinent exclusions which preclude coverage, there was no covered cause of loss. Plaintiff alleges that the exclusions in this section are not applicable to the Additional Time Element Coverages, (Complaint ¶ 28) this allegation leaves out a key portion of the Policy. SECTION IV – PERILS EXCLUDED contains two separate sections, each of which contains an enumeration of various exclusions.

While the introduction to the first section of SECTION IV – PERILS EXCLUDED contains language referencing the Additional Time Element Coverages, section two contains no such language. The exclusions in section two are not qualified and apply to all of the coverages under the Policy. Moreover, the Additional Time Element Coverages provision specifically states that "The following Additional Time Element Coverage and Additional Time Element Coverages…are subject to the terms and conditions of this Policy…" (Policy p. 31 of 64).

#### 1. Even if otherwise triggered, coverage for the claim is precluded by the Policy's Communicable or Infectious Disease exclusion.

The Policy contains an exclusion for communicable or infectious disease which provides as follows:

**SECTION IV – PERILS EXCLUDED**

1. Except as otherwise provided under the Additional Coverages or Additional Time Element Coverages (and in such event, only to the extent provided therein), we do not insure loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. The following exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

*** 

2. We will not pay for loss or damage caused by, or attributable to, any of the following:

   i. Communicable or infectious disease, condition or sickness, including (i) any causative agent of any such condition, disease, or sickness regardless of whether such agent gives rise to any such condition, disease, or sickness, or (ii) any actual or attempted testing for, containing, detoxifying, mitigating, monitoring or neutralizing of, responding to, or assessing the effects of any communicable or infectious disease, condition or sickness or causative agent.

(Policy p. 28-29 of 64).

By its plain language, this exclusion applies to preclude coverage. The allegations in the complaint make clear that the orders and "loss or damage" complained of are all caused by or attributable to COVID-19, a communicable or infectious disease. This unambiguous exclusion would preclude coverage even if Plaintiff could show that the Policy's coverage grant had been triggered. In *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, the court considered the following exclusion after governmental orders caused the insured's locations to close:

> [The Insurer] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria or virus.... This exclusion applies whether or not the loss even results in widespread damage or affects a substantial area

No. 1:20-CV-22833, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 2, 2020). The insurer argued that the allegations in the complaint made clear that the "COVID-19 pandemic triggered the civil government orders to halt the spread of the virus, which in turn led to Plaintiffs' business

15

suspension and/or closure…" *Id*. The insured argued that its losses resulted from the governmental orders and not the virus itself. *Id*. Noting that the Plaintiff had expressly alleged that its losses were incurred from measures to stop the spread of COVID-19, the court applied the virus exclusion, finding coverage was precluded even if otherwise triggered. *Id*. at *10.

The United States District Court for the Middle District of Florida has also applied a virus exclusion to preclude coverage for COVID-19 business interruption losses *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218, at *1 (M.D. Fla. Sept. 2, 2020). There, the insured dental office sought both decontamination expenses and loss of business income arising from COVID-19 restrictions. *Id*. The insurer denied the claim, in part because the policy contained an exclusion for loss or damage caused "directly or indirectly," by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id*. at *2. The court concluded that the damages resulted from COVID-19, "which is clearly a virus" and applied the exclusion to preclude coverage. *See also, Stanford Dental, PLLC v. The Hanover Ins. Grp., Inc.* No. 20-CV-11384, 2021 WL 493322, at *6 (E.D. Mich. Feb. 10, 2021) (surveying recent cases nationwide applying virus exclusions to business interruption claims) ("Many courts agree that virus exclusions like the one in the Policy bar claims for losses by policyholders who were forced to close by government orders issued in response to COVID-19.")

Similarly, here, the Court should apply the broad language of the Communicable or Infectious Disease exclusion because all of Plaintiff's alleged damages arise from COVID-19, a communicable or infectious disease.

**2.   Even if otherwise triggered, coverage for the claim is precluded by the Policy's Delay, loss of market, or loss of use exclusion as well as the exclusion for indirect, remote, or consequential loss or damage.**

In addition to the exclusion for communicable or infectious disease, the Policy also contains the following exclusions:

**SECTION IV – PERILS EXCLUDED**

\*\*\*

2.   We will not pay for loss or damage caused by, or attributable to, any of the following:

   a.   Delay, loss of market, or loss of use.

16

    b.  Indirect, remote, or consequential loss or damage.

The Policy excludes loss or damage caused by or resulting from "[d]elay, loss of use or loss of market." Plaintiff alleges that "The presence of COVID-19 at Frontier's commercial tenants' properties caused direct physical loss and damage to property because, among other things, it made Frontier unable to utilize something in the real, material, or bodily world, resulting from a given cause (i.e., COVID-19)." (Complaint ¶ 83). In other words, Plaintiff alleges that it has suffered a loss due to the loss of use of the property. This is expressly excluded under the Policy.

The Middle District of Florida rejected a similar position in *Harvest Moon Distributors, LLC v. Southern-Owners Ins. Co.*, Case No. 6:20-cv-1026-Orl-40DCI, 2020 WL 6018918 (M.D. Fla., Oct. 9, 2020). In *Harvest Moon*, the plaintiff alleged that "Plaintiff's loss of use of the insured property and insured property's inability to function as contemplated and intended by Plaintiff . . . is a direct physical loss." *Id.* at *3. The court held that the exclusion for "delay, loss of use or loss of market," precluded coverage. *Id.* at *6. *Harvest Moon Distributors, LLC*, 2020 WL 6018918, at *6. Similarly, in *Mudpie, Inc. v. Travelers Casualty Insurance Co. of America*, Case 20-cv-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal., Sept. 14, 2020), the court noted that the loss of use exclusion emphasizes that the policy "was not intended to encompass a loss where the property was rendered unusable without an intervening physical force" and undermined the insured's claim that "a reasonable purchaser of insurance would read the policy as providing coverage for a loss of functionality." *Id. See also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235 (S.D.N.Y. 2003) (interpreting "loss of market" exclusion as excluding loss resulting from economic changes occasioned by factors such as competition and shifts in demand after 9/11). Any damages resulting from Plaintiff's alleged loss of use of its properties for its intended purpose are plainly excluded by the "delay, loss of use or loss of market" exclusion.

In addition, the indirect, remote, or consequential loss or damage exclusion further clarifies that there is no coverage available under the Policy and instead that coverage is only available for *direct* physical loss or damage.

    **3.**  **The Policy's Idle Periods exclusion would preclude coverage for Plaintiff's losses.**

The Policy's Additional Time Element Coverages are subject to the following *additional*

17

exclusions.

## SECTION V – TIME ELEMENT COVERAGES

\*\*\*

E.    **Additional Time Element Exclusions**

For time element loss covered under this Policy, we will not pay for:

    **1.    Idle Periods**

    Any loss during any period in which business would not or could not have been conducted for any reason other than a loss for which coverage would have been provided under this Policy.

    **2.    Remote Loss**

    a.    Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order;

    b.    Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

    c.    Any other consequential or remote loss;

unless coverage is provided under any Additional Time Element Coverage and then only to the extent provided therein.

(Complaint p. 38-39).

As noted throughout, Frontier's allegations, taken as true, demonstrate that Frontier's business would not or could not be conducted because of COVID-19 restrictions, not from direct physical loss or damage and as a result-not from a loss for which there is coverage provided under the Policy. These provisions serve to make clear that there is no time element coverage for the period of time Plaintiff's business would not or could not have been conducted due to COVID-19 restrictions.

## **CONCLUSION**

For all the reasons set forth above, Endurance respectfully requests that this Court dismiss the Complaint in its entirety, with prejudice, and award costs and fees for responding to the Complaint.

Respectfully submitted this 19th day of February, 2021

**CLYDE & CO US LLP**

*/s/ David Wagner*
David Wagner, Esq. / FBN 102611
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: 305-446-2646/Fax: 305-441-237
Email: david.wagner@clydeco.us

Bob Fisher / *pro hac forthcoming*
GA Bar No. 261951
Jane Warring, Esq. / *pro hac forthcoming*
GA Bar No. 142696
271 17th Street; Suite 1720
Atlanta, GA 30363
Tel: 404-410-3150/Fax: 404-410-3151
Email: robert.fisher@clydeco.us
jane.warring@clydeco.us

*Attorneys for Endurance American Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I, David Wagner, do hereby certify that a true and correct copy of the above and foregoing has been filed with the Court on this day and a copy of same has been provided to counsel listed below via the Court's ECF system, United States Mail, and Email to the following counsel of record in the removed action:

Joshua Truppman, Esq.
Florida Bar No. 111795
Robert Visca, Esq.
Florida Bar No. 111800
Benjamin H. Brodsky, Esq.
Florida Bar No. 73748
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1stStreet, Suite 400
Miami, Florida 33131
Tel: (305) 503-5054
bbrodsky@bfwlegal.com
joshua@bfwlegal.com
robert@bfwlegal.com
docketing@bfwlegal.com

Keith A. Truppman, Esq.
Florida Bar No. 473715
MINTZ TRUPPMAN, P.A.
1700 San Souci Blvd.
North Miami, FL 33181
Tel: (305) 893-5506
ktruppman@mintztruppman.com

*Attorneys for Plaintiff*

This 19th day of February, 2021.

*/s/ David Wagner*
David Wagner, Esq. / FBN 102611
